**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **JEREMY COOPER,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 13-cv-730-MJR-SCW** |
| **JAMES CHANDLER and JAMES CHEATHAM,** | ) | |
| **Defendants.** | ) | |

**REPORT AND RECOMMENDATION**

**WILLIAMS, Magistrate Judge:**

## I. Introduction

This case is before the Court on Defendants' Motion for Summary Judgment (Docs. 25 & 26). The matter has been referred to United States Magistrate Judge Stephen C. Williams by United States District Judge Michael J. Reagan pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (c), Federal Rule of Civil Procedure 72(b), and Local Rule 72.1(a). It is **RECOMMENDED** that the District Court **ADOPT** the following findings of fact and conclusions of law, and **GRANT** Defendants' motion for summary judgment (Docs. 25 & 26).

## II. Findings of Fact

### A. Procedural Background

Plaintiff filed his Complaint on August 20, 2013 alleging that Defendants James Chandler and James Cheatham used excessive force against Plaintiff (Doc. 1). Specifically, Plaintiff alleges that while he was being escorted back to his cell on December 18, 2012 after an appearance before the Adjustment Committee, Defendant Chandler threw Plaintiff into a steel sink and Defendant Cheatham punched him in the neck (Doc. 10). Plaintiff claims that the act of Chandler

pushing him into a sink injured his wrist and leg (*Id.*).

In response to Plaintiff's Complaint, Defendants filed a motion for summary judgment arguing that Plaintiff had failed to exhaust his administrative remedies against them. Defendants noted that only one grievance was filed before the ARB regarding the alleged excessive force incident. That grievance was dated January 10, 2014 and was received by the ARB on January 16, 2013 (Doc. 26 Ex. A-1). The grievance was returned to Plaintiff because he failed to provide a response from the grievance officer or chief administrative officer (*Id.*). The ARB also noted that internal affairs at the prison was investigating the issue (*Id.*). Plaintiff filed a Response (Doc. 34) arguing that he sought to exhaust his administrative remedies but that his grievances went unanswered. He also states that in his January 10, 2014 grievance to the ARB he indicated that he wrote Menard internal affairs but they failed to do anything and his emergency grievance went unanswered. Plaintiff argues that the grievance process was, thus, unavailable to him as Menard staff failed to respond to his grievances.

Defendants have recently offered an emergency grievance from Plaintiff dated December 25, 2012 which deals with the excessive force incident which occurred on December 18, 2012. The grievance indicates that it was received by the grievance officer on December 27, 2012 and was labeled not an emergency by the warden on December 28, 2012 (Doc. 37 Ex. C).

**B. *Pavey* Hearing**

Because the undersigned found that there were issues of fact as to whether Plaintiff exhausted his administrative remedies, the Court conducted a hearing on May 8, 2014 in accordance with ***Pavey v. Conley*, 544 F.3d 739, 742(7th Cir. 2008).**

At the hearing, the undersigned focused the discussion on two grievances in the record. One grievance was submitted as an emergency grievance dated December 25, 2012 which

was received on December 27, 2012 and deemed a non-emergency by the warden on December 28, 2012 (Doc. 37 Ex. C). The grievance was returned to Plaintiff on January 4, 2013 (Doc. 37 Ex. D) and Plaintiff admits that he received the grievance back from the grievance officer. Plaintiff alleges that he then submitted the grievance to his counselor but never received a response. The other grievance at issue is dated January 10, 2013 and was submitted directly to the ARB. This grievance also complains about the excessive force used by Chandler and Cheatham. The ARB received the grievance on January 16, 2013 and reviewed and returned the grievance on February 5, 2013 as the grievance did not have a grievance officer's response or signature from the chief administrative officer (Doc. 26 Ex. A-1). At the hearing, Plaintiff acknowledged that this was not an appeal of the emergency grievance but rather a new grievance which he sent directly to the ARB after learning from his counselor that a copy of the December 25, 2012 grievance did not reach the counselor for review.

At the hearing, counsel for Defendants called Laura Oakley, a grievance officer at Menard Correctional Center, to testify about Plaintiff's grievance submissions. She reviewed the grievance logs and noted that Plaintiff filed four emergency grievances in 2012 and 2013 and only filed one regular grievance in 2013. Oakley noted that the records indicated that Plaintiff submitted an emergency grievance on December 27, 2012 dealing with staff conduct which the warden deemed was not an emergency and was returned to the inmate. On the grievance, the warden put a note referring the grievance to internal affairs for investigation. Oakley testified that the note was for the grievance officer and that the warden's request that the grievance be forwarded to internal affairs did not affect how Plaintiff was to handle the grievance. She also noted that while emergency grievances that are deemed non-emergencies are not usually kept in the inmate's file, she specifically kept a copy of Plaintiff's grievance due to the request that internal affairs be informed of the allegations. Oakley also stated that the cumulative counseling summary log indicated that an emergency grievance on the

staff conduct was returned to Plaintiff on January 4, 2013.  She also testified that the summary indicated that Plaintiff had numerous meetings with his counselors and none of the entries ever mentioned Plaintiff complaining about grievances not being returned.

Mark Phoenix, a correctional counselor at Menard, also testified about Plaintiff's grievances.  Phoenix testified that he reviewed Plaintiff's cumulative counseling summary and noted that he had spoken with Plaintiff on February 8, 2013 and Plaintiff requested his segregation out date.  Phoenix noted that the entry did not indicate that Plaintiff asked about his grievances and that if the status of grievances had been discussed with any counselor, that conversation would have also been documented in the counseling notes.

Plaintiff also testified at the hearing.  Plaintiff testified that the December 25, 2012 and January 10, 2013 grievances were not the only grievances he wrote about the excessive force; Plaintiff testified that he submitted grievances everyday but only the December 25, 2012 grievance was responded to.   Plaintiff acknowledged that he got the emergency grievance back from warden when it was deemed not an emergency.  He testified that he then hand-copied that grievance, but did not check the emergency grievance box because it had already been deemed a non-emergency and submitted the grievance to his counselor sometime in early January.  He testified that he never received the grievance back and when a female counselor made rounds, he asked about the grievance and she informed him she never received it.   He also testified that he wrote a kite about the grievance and was informed his grievance was never received.  At that time, Plaintiff testified that he wrote a new grievance and submitted it directly to the ARB.  Thus, Plaintiff states that his grievance to the ARB was, in fact, his third grievance on the excessive force claim.  Plaintiff stated that in the grievance to the ARB, he informed the ARB that Menard was not answering his grievances but that the ARB still returned the grievance for failure to attach the grievance officer and chief administrative officer

response. He also testified that he did not ask Mark Phoenix about his grievance in February because he had already previously spoken to a female counselor in January about the missing grievance.

## III. Conclusions of Law

"Summary Judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." ***Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010).** Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). **42 U.S.C. §1997e(a).** That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." ***Id.* (emphasis added).** The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. ***Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion").** Exhaustion must occur before the suit is filed. ***Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004).** Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. ***Id.*** Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." ***Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005).** Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." ***Dole*, 438 F.3d at 809.**

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. ***Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008).** Thus,

where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3)If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

***Id.* at 742.**

**A. Exhaustion Requirements Under Illinois Law**

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. **20 Ill. Administrative Code §504.800 *et seq.*** The grievance procedures first require inmates to speak with the counselor about their complaint. **20 Ill. Admin. Code §504.810(a).** Then, if the counselor does not resolve the issue, the inmate must file a grievance form directed to the Grievance Officer within 60 days of the incident. ***Id.*** The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is subject of or who is otherwise involved in the complaint. The provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

**20 Ill. Admin. Code §504.810(a)(b).** "The Grievance Officer shall [then] consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer...[who]shall advise the offender of the decision in writing within 2 months after receipt of the written grievance, where reasonably feasible under the circumstances." **20 Ill. Admin. Code §504.830(d).** If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the Administrative Review Board ("ARB"). The grievance procedures specifically state, "[i]f after receiving the response of the Chief Administrative Officer, the offender still feels that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director within 30 days after the date of the decision. Copies of the Grievance Officer's report and the Chief Administrative Officer's decision should be attached." **20 Ill. Admin. Code §504.850(a).** "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." **20 Ill. Admin. Code §504.850(e).** "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, where reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." **20 Ill. Admin. Code §504.850(f).**

The grievance procedures do allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the Chief Administrative Officer ("CAO") who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. **20 Ill. Admin. Code §504.840(a).** If an inmate forwards the grievance to the CAO as an emergency grievance, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him which course he has decided is necessary

after reading the grievance.   **20 Ill. Admin. Code §504.840(b).**   Once the CAO has informed the inmate of his decision, the inmate may then appeal that decision to the ARB on an expedited basis.   **20 Ill. Admin. Code §504.850(g).**

**B.     Analysis**

The undersigned **FINDS** that Plaintiff has failed to exhaust his administrative remedies as to his excessive force claim.   The parties do not dispute that Plaintiff filed an emergency grievance on December 25, 2012 (Doc. 37 Ex. B at p. 3; Ex. C).   That grievance was returned to Plaintiff on January 4, 2013 (Doc. 37 Ex. C at p. 4).   The parties also do not dispute that Plaintiff submitted another grievance on his excessive force claim directly to the ARB on January 10, 2013, which was received by the ARB on January 16, 2013 (Doc. 40 Ex. A-1 at p. 2).   Plaintiff testified at the hearing that this was not an appeal of his December 25, 2012 emergency grievance, but rather a new grievance that he submitted for consideration directly to the ARB after allegedly not receiving a response from his counselor on the December 25, 2012 grievance.   Thus, the undersigned finds the January 10, 2013 grievance to be a separate grievance from the December 25, 2012 emergency grievance.   This separate grievance was not properly exhausted because, as the ARB pointed out, Plaintiff skipped the institutional exhaustion process and failed to obtain the grievance officer and chief administrative officer response to the grievance.

Plaintiff argues that he exhausted his administrative remedies because he submitted his December 25, 2012 grievance to his counselor after receiving it back from the warden and never received the grievance back from his counselor.   He testified at the hearing that he later spoke with a female counselor who told him that she never received the grievance, at which time he wrote a new grievance, labeled it January 10, 2013, and submitted it directly to the ARB.   Thus, Plaintiff argues that he only submitted the January 10, 2013 grievance to the ARB to show that he was trying to exhaust his

remedies but he never received responses from the institution. If the Court believes Plaintiff's argument then he could be found to have exhausted his administrative remedies as he never received a response to his grievance. ***See Walker v. Sheahan*, 526 F.3d 973, 979 (7th Cir. 2000) (an inmate is not required to appeal his grievance if he submits the grievance to the proper authorities but never receives a response); *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (a remedy can be unavailable to a prisoner if the prison does not respond to the grievance or uses misconduct to prevent a prisoner from exhausting his resources); *Brown v. Darnold*, 2010 WL 3702373, at *3 (S.D. Ill. 2010) ("The Seventh Circuit has held that administrative remedies become 'unavailable' when prison officials fail to respond to inmate grievances." (quoting *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002)).**

The undersigned, however, finds that Plaintiff's testimony, that he submitted his grievance in early January and never received a response, to lack credibility. Plaintiff testified that he wrote the January 10, 2013 grievance to the ARB when he learned his grievance to the counselor had been lost and that he informed the ARB that Menard was not responding to his grievances. The grievance to the ARB that Plaintiff submitted, however, does not reflect Plaintiff's version of events. Instead, the grievance to the ARB indicates that Plaintiff wrote Menard's internal affairs department but they have failed to do anything about Plaintiff's claims (Doc. 40 Ex. A-1 at p. 3). Reporting conduct to internal affairs does not constitute exhaustion at the institutional level. ***Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011).** Further, Plaintiff stated in his grievance to the ARB that his emergency grievance was unanswered. Plaintiff acknowledged that he received his emergency grievance back from the warden, so the undersigned takes Plaintiff's statement in the grievance that his emergency grievance was "unanswered" to mean that the warden did not respond the way Plaintiff anticipated. Plaintiff fails to state anything in the grievance about his counselor or grievance officer

not responding to the grievance or that he failed to receive any sort of response to his grievance. The undersigned is further convinced that Plaintiff is referring only to the emergency grievance to the warden in his January 10, 2013 grievance as Plaintiff testified that he rewrote his December 25, 2012 grievance and did not check the "emergency" box on the subsequent filing with his counselor as it was deemed not an emergency by the warden. His referral to an "emergency grievance" in his January 10 grievance appears to reference his grievance to the warden. Thus, there is no indication in his January 10, 2013 grievance to the ARB that he was not receiving responses from his counselor or grievance officer, contrary to Plaintiff's testimony.

The inconsistency in Plaintiff's testimony leads the undersigned to believe that Plaintiff did not submit his December 25, 2012 grievance to the counselor. Evidence in the counseling summary also contradicts Plaintiff's testimony and supports the finding that Plaintiff did not file his December 25, 2012 grievance with his counselor. Plaintiff testified that he spoke with a female counselor about his missing grievance and the counselor told Plaintiff that she did not receive the grievance. However, Mark Phoenix, a correctional counselor at Menard, testified that if Plaintiff had asked about the status of his grievance with his counselor, that request and the response would have been placed in Plaintiff's cumulative counseling summary. The undersigned found Phoenix's testimony on this point to be credible. However, a review of Plaintiff's cumulative counseling summary found that Plaintiff met with counselors on numerous occasions but did not ask about a grievance not being responded to until March 2013 (Doc. 37 Ex. A-2). There is no evidence in the summary to support Plaintiff's statements to he spoke with a counselor about his December 25, 2012 grievance or that he submitted a kite to his counselor regarding the same. In fact, Plaintiff met face to face with a counselor on three occasions in January and early February, including January 18, 2013, January 30, 2013, and February 8, 2013, and never asked about his grievance. On January 18, 2013 he

informed his counselor that he had nothing to discuss. Further, while Plaintiff testified that he met with a female counselor in early January, there are no entries to suggest that he had any such meeting. His first face to face meeting with a female counselor after submitting his December 25, 2012 grievance occurred on January 30, 2013 and he informed the counselor he had no requests. Thus, the evidence in the counseling summary also contradicts Plaintiff's testimony.

As the undersigned finds Plaintiff's testimony to be contradicted and inconsistent, the Court finds that his testimony that he submitted his December 25, 2012 grievance to his counselor to lack credibility. There is simply no evidence in the record that he submitted the grievance or that he spoke with a counselor about the status of the grievance and was told it was never received. The timing of Plaintiff's grievance to the ARB is also suspect as Plaintiff did not receive his emergency grievance back from the warden until January 4, 2013, yet he submitted his grievance to the ARB on January 10, 2013, leaving Plaintiff little time to accomplish all that he claims to have accomplished, including hand-copying the emergency grievance, submitting it to the counselor, speaking with the counselor sometime later and learning it was never received, writing a new grievance, and submitting it to the ARB. That this lengthy chain of events occurred within six days seems suspect. The simplest explanation, and that supported by the record before the undersigned, is that Plaintiff did not submit his grievance to his counselor and instead wrote a new grievance, dated it January 10, 2013, and submitted it directly to the ARB. Thus, the undersigned finds that Plaintiff failed to exhaust his administrative remedies as he did not properly submit the grievance all the way through the institutional level before submitting it to the ARB.

## IV. Conclusion and Recommendation

Accordingly, the undersigned **RECOMMENDS** that the Court **FIND** that Plaintiff

has failed to exhaust his administrative remedies against Defendants James Chandler and James Cheatham, **GRANT** Defendants' motion for summary judgment (Docs. 25 and 26), and **DISMISS without prejudice** Plaintiff's claims against Defendants.

Pursuant to **28 U.S.C. § 636(b)(1)** and **Local Rule 73.1(b),** the parties may object to any or all of the proposed dispositive findings in this Recommendation. The failure to file a timely objection may result in the waiver of the right to challenge this Recommendation before either the District Court or the Court of Appeals**.** ***See, e.g., Snyder v. Nolen*, 380 F.3d 279, 284 (7th Cir. 2004).** Accordingly, Objections to this Report and Recommendation must be filed on or before **May 30, 2014**.

**IT IS SO ORDERED**.
DATED: May 13, 2014.

*/s/ Stephen C. Williams*
STEPHEN C. WILLIAMS
United States Magistrate Judge