IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JEREMY COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 13-cv-0730-MJR-SCW |
| | ) | |
| JAMES CHANDLER and | ) | |
| JAMES CHEATHAM, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

REAGAN, District Judge:

### A.   Introduction

In July 2013, Jeremy Cooper (then confined at Menard Correctional Center, within this Judicial District) filed suit in this Court under 42 U.S.C. 1983, alleging deprivation of rights secured to him by the United States Constitution. The complaint alleged that two correctional officials at Menard – James Chandler and James Cheatham – used excessive force against Cooper when escorting him to his cell following a December 18, 2012 appearance before the prison's Adjustment Committee. Specifically, Cooper alleged that Chandler threw Cooper into a steel sink, injuring Cooper's leg and wrist, and that Cheatham punched Cooper in the neck.

On threshold review under 28 U.S.C. 1915A, the undersigned Judge found that the complaint stated a colorable claim against both Defendants for violation of the Eighth Amendment, resulting from the use of excessive force against Cooper on December 18, 2012. Chandler and Cheatham (collectively, "Defendants") answered the

complaint in October 2013 and December 2013, respectively, raising the affirmative defense of failure to exhaust administrative remedies.

Now before the Court is Defendants' January 31, 2014 motion for summary judgment, asserting that Cooper (Plaintiff) failed to exhaust administrative remedies prior to filing this suit, as required by the Prison Litigation Reform Act, 42 U.S.C. 1997e(a).  The parties filed supporting and opposing briefs through mid-April 2014, with submission of supplemental exhibits in early May 2014.  On May 8, 2014, the Honorable Stephen C. Williams, United States Magistrate Judge, conducted an evidentiary hearing (a "Pavey" hearing) on the issue of exhaustion.  *See Pavey v. Conley*, **544 F.3d 739, 742 (7th Cir. 2008),** *cert. denied,* **556 U.S. 1128 (2009).**

On May 13, 2014, Judge Williams submitted a Report and Recommendation (Report, Doc. 42) which recommends that the undersigned District Judge grant Defendants' motion for summary judgment.  Plaintiff filed objections to the Report on May 15, 2014 (Doc. 43), and Defendants timely responded thereto on June 6, 2014 (Doc. 45).

The undersigned District Judge undertakes de novo review of the portions of the Report to which Plaintiff specifically objected.  **28 U.S.C. 636(b)(1); FED. R. CIV. P. 72(b); SOUTHERN DIST. OF ILLINOIS LOCAL RULE 73.1(b).**  The undersigned can accept, reject, or modify Judge Williams' recommendations, receive further evidence, or recommit the matter to Judge Williams with instructions.  *Id.*  For the reasons stated below, the Court adopts Judge Williams' Report in its entirety.  Analysis begins with the procedural standards governing analysis of Defendants' summary judgment motion.

B. <u>**Standard Applicable to Federal Summary Judgment Motions**</u>

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *Archdiocese of Milwaukee v. Doe,* **743 F.3d 1101, 1105 (7th Cir. 2014),** *citing* **FED. R. CIV. P. 56(a).** *Accord Anderson v. Donahoe,* **699 F.3d 989, 994 (7th Cir. 2012).** A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Serednyj v. Beverly Healthcare, LLC,* **656 F.3d 540, 547 (7th Cir. 2011),** *citing Anderson v. Liberty Lobby, Inc.,* **477 U.S. 242, 248 (1986).** *Accord Bunn v. Khoury Enterpr., Inc.,* **-- F.3d --, 2014 WL 2198557 (7th Cir. May 28, 2014).**

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson,* **699 F.3d at 994;** *Righi v. SMC Corp.,* **632 F.3d 404, 408 (7th Cir. 2011);** *Delapaz v. Richardson,* **634 F.3d 895, 899 (7th Cir. 2011).** As the United States Court of Appeals for the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving her the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in her favor." *Spaine v. Community Contacts, Inc.,* **-- F.3d --, 2014 WL 2855000 (7th Cir. June 24, 2014).**

One other procedural point bears note here. Although the affirmative defense of failure to exhaust typically is raised via summary judgment motion, *dismissal without prejudice* is the correct disposition of any claim filed before the full administrative

process is completed.  *See, e.g., Fluker v. County of Kankakee,* **741 F.3d 787, 791-92 (7th Cir. 2013);** *Burrell v. Powers,* **431 F.3d 282, 285 (7th Cir. 2005).**

    C.    <u>ANALYSIS</u>

    ►    <u>Overview of Exhaustion Requirement</u>

The Prison Litigation Reform Act (PLRA), Pub. L. 104-134, 110 Stat. 1321 (1996), requires prisoners to exhaust administrative remedies before they file suit in federal court.  **42 U.S.C. 1997e(a).**  The exhaustion requirement applies to all lawsuits challenging prison conditions under 42 U.S.C. 1983 and actions under any other federal law brought by a prisoner confined in any jail or correctional facility.  ***See Porter v. Nussle,* 534 U.S. 516, 532 (2002) (the PLRA exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong").**

As the United States Court of Appeals for the Seventh Circuit summarized in *Pavey v. Conley,* **663 F.3d 899, 903 (7th Cir. 2011)**:

> A prisoner may not bring a federal suit about prison conditions unless he first has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a)….; *Fletcher v. Menard Corr. Ctr.,* 623 F.3d 1171, 1173 (7th Cir. 2010). A remedy is not exhausted if the prisoner has failed to abide by the procedures for pursuing relief. *Woodford v. Ngo,* 548 U.S. 81, 95, 126 S.Ct. 2378, 165 L.Ed.2d 368 (2006)…. The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving.

Exhaustion is a condition precedent to suit in federal court, so the inmate must exhaust *before* he commences his federal litigation; he cannot exhaust *while* his lawsuit is pending.  *See Perez v. Wisconsin Department of Corr.,* **182 F.3d 532, 535 (7th Cir. 1999);** *Dixon v. Page,* **291 F.3d 485, 488 (7th Cir. 2002).**

If the inmate fails to exhaust before filing suit in federal court, the district court must dismiss the suit. *See Jones v. Bock*, 549 U.S. 199, 223 (2007); *Burrell*, 431 F.3d at 284-85.[1] Exhaustion-based dismissals are made without prejudice. *Burrell*, 431 F.3d at 285, *citing Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002) ("Dismissal for failure to exhaust is without prejudice…"), and *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) ("*all* dismissals under § 1997e(a) should be without prejudice").

Because exhaustion is an affirmative defense, "the burden of proof is on the prison officials." *Kaba v. Stepp*, 458 F.3d 678, 680 (7th Cir. 2006). So, here, Defendants bear the burden of demonstrating that Plaintiff Cooper failed to exhaust all available administrative remedies before he filed this suit. *See Kaba*, 458 F.3d at 681, *citing Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006).

To properly exhaust within the meaning of the PLRA, the inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir.), *cert. denied*, 537 U.S. 949 (2002). As an inmate confined in the IDOC, Plaintiff Cooper was obligated to follow the regulations contained in the IDOC's grievance procedures. The IDOC's three-step administrative process for resolving inmate grievances is delineated in 20 Illinois Administrative Code § 504.800, *et seq.* (West 2008).

---

[1] Although *dismissal* is the procedural step the district court takes if a plaintiff failed to exhaust prior to filing suit, the issue of exhaustion usually is raised via summary judgment motion, so that the Court can consider evidence "outside the pleadings," such as affidavits, grievances, responses, appeals, and related documentation. *See* FED. R. CIV. P. 12(d).

At *step one,* the inmate presents his complaint to a correctional counselor. If that fails to resolve the problem, *step two* entails the inmate submitting a written grievance on a designated form to the facility's Grievance Officer within a specific period (usually the grievance must be filed within 60 days after the inmate discovers the problem about which he complains). After investigating, the Grievance Officer forwards his conclusions to the Chief Administrative Officer (CAO). The CAO's decision is furnished to the inmate.

If the inmate still is unsatisfied, *step three* is an appeal in writing to the Director of the IDOC, which is done through the Administrative Review Board (ARB). Specifically, the inmate submits the Grievance Officer's report and the CAO's decision to the ARB. The ARB examines the documents, determines whether a hearing is needed, may interview the inmate, and may call witnesses. Ultimately, the ARB submits a written report of its findings to the Director of the IDOC who makes the final decision on the grievance. Copies of the ARB's report and the Director's final decision are sent to the inmate.

> ► **Application to Case at Bar**

At the times relevant to this lawsuit, Plaintiff was an IDOC inmate, and Defendants were IDOC employees. This § 1983 action by a confined individual is subject to the exhaustion requirement of the PLRA. The question before the Court is whether Plaintiff fully exhausted his available administrative remedies before filing this suit alleging the use of excessive force against him, in violation of the Eighth Amendment. The undersigned answers this question in the negative.

The record before the Court contains two grievances relating to the December 18, 2012 alleged use of excessive force on Plaintiff.  First, Plaintiff filed a **December 25, 2012** "emergency grievance" relating to the December 18, 2012 incident.  Evidence adduced at the Pavey hearing before Judge Williams established that this grievance was received December 27, 2012 and deemed a non-emergency grievance by Menard's warden the following day.  The grievance was returned to Plaintiff on January 4, 2013.  Plaintiff (who testified at the Pavey hearing) *admitted* that he received the grievance back from the grievance officer.  Plaintiff claims that he then submitted this grievance to a counselor but never got a response.  Plaintiff also claimed that he wrote a "kite" (a letter or note) about this grievance.

Other testimony presented at the hearing before Judge Williams plainly contradicts the assertions that Plaintiff submitted the 12-25-12 grievance to a counselor who failed to respond, or that he wrote a kite about this grievance.  For instance, Laura Oakley, a Menard grievance officer, testified that Plaintiff had numerous meetings with his counselors during this time period, and the entries relating to those meetings reference no complaint by Plaintiff about unreturned or unresponded-to grievances.

Similarly, the testimony of Mark Phoenix, a correctional counselor at Menard who had reviewed Plaintiff's records and personally spoke with Plaintiff on February 8, 2013, testified that if Plaintiff had raised any concern about the status of the December 2012 grievance, it would appear in his counseling notes; and no such reference appeared.

Additionally, Plaintiff's cumulative counseling summary, introduced at the Pavey hearing, is devoid of support for Plaintiff's statement that he spoke with a counselor (or submitted a "kite") about the 12-25-12 grievance. To the contrary, the records show Plaintiff met face-to-face with a counselor three times between January 18, 2013 and February 8, 2013, and never inquired about his grievance.

Like Judge Williams, the undersigned finds that Plaintiff's unsupported testimony that he submitted the 12-25-12 grievance to a counselor after receiving it back from the warden (and that the counselor never responded, etc.) lacks credibility. The Court concludes that Plaintiff failed to exhaust as to the 12-25-12 grievance, because he stopped short of taking all necessary steps in the IDOC exhaustion process. The grievance was returned to Plaintiff on January 4, 2013,[2] Plaintiff admitted that he received the grievance back from the grievance officer, and the record does not support Plaintiff's assertion that he did anything further with this grievance.

Plaintiff also filed a **January 10, 2013** grievance about the incident in question (*see* Doc. 40, p. 6). That grievance, submitted directly to the ARB, was received by the ARB (date-stamped by the Office of Inmate Issues of the ARB) on January 16, 2013. The January 10, 2013 grievance was returned to Plaintiff on February 5, 2013, because it included neither a grievance officer's response nor a CAO response (*see* Doc. 40, p. 5).

---

[2] *See* Doc. 37, Exh. D., p. 4: "Comments: Returned emergency grievance E86. CAO deemed not an emergency. Grv dated 12-25-12 received by GO 12-27-12 states that N2 Staff Chandler and Cheatham assaulted him by throwing him to the back of his cell. Issue was referred to IA on 12/28/12 per CAO."

The form states that Plaintiff needed to *resubmit* the grievance with this additional information (the grievance officer's response and CAO's response).[3]  Plaintiff did not do so.  Plaintiff failed to take all necessary steps as to this grievance.

At the Pavey hearing before Judge Williams, the question arose as to whether the January 10, 2013 grievance was meant as an *appeal* of the December 25, 2012 grievance. Plaintiff testified that the 1-10-13 grievance was *not* an appeal of his 12-25-12 "emergency" grievance, but rather a fresh grievance which he submitted directly to the ARB after allegedly not received a response to his 12-25-12 grievance.

In his objections to the Report, Plaintiff now argues that (a) the 1-10-13 grievance should be treated as an *appeal* of the 12-25-12 grievance, and (b) inmates have a right under the Illinois Administrative Code to exhaust by appealing an emergency grievance to the ARB.  The Court finds nonmeritorious both parts of this argument, rejecting the first proposition for the same reasons Judge Williams did.

Judge Williams concluded that the 1-10-13 grievance was a separate grievance (not an appeal) from the 12-25-12 grievance (Doc. 42, p. 11; emphasis supplied):

> … [T]he undersigned finds Plaintiff's testimony to be contradicted and inconsistent….  There simply is no evidence in the record that [Plaintiff] submitted the [12-25-12] grievance or that he spoke with a counselor about the status of the grievance and was told it was never received.  The timing of Plaintiff's [1-10-13] grievance is also suspect, as Plaintiff did not receive his emergency grievance back from the warden until January 4, 2013, yet he submitted his [1-10-13] grievance to the ARB on January 10, 2013, leaving Plaintiff little time to accomplish all that he claims to have accomplished, including hand-copying the emergency grievance,

---

[3]  Sherri Benton, a member of the ARB, wrote a comment on the form returning the grievance to Plaintiff which noted that Internal Affairs was investigating the incident in question (*id.*).

> submitting it to the counselor, speaking with the counselor sometime later and learning it was never received, writing a new grievance, and submitting it to the ARB. That this lengthy chain of events occurred within six days seems suspect. **The simplest explanation, and that supported by the record before the undersigned, is that Plaintiff did not submit his grievance to his counselor and instead wrote a new grievance, dated it January 10, 2013, and submitted it directly to the ARB.**

Having reviewed the evidence in the record and the parties' argument, the undersigned finds that the 1-10-13 grievance was a new grievance (not an attempted appeal) and that Plaintiff failed to exhaust it.

In addition to adopting the sound reasoning delineated by Judge Williams in the Report, the undersigned notes that Plaintiff is incorrect as to the second part of his argument – i.e., regarding the provisions of the Illinois Administrative Code allowing exhaustion via "appeal" of grievances to the ARB.

The Code provides for filing of emergency grievances by the following method. The inmate must forward the grievance directly to the CAO (the warden), who determines whether it should be handled as an emergency. If the CAO "determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender, the grievance shall be handled on an emergency basis." **20 Ill. Admin. Code § 504.840(a).** The CAO "shall expedite processing of the grievance and respond to the offender, indicating what action shall be or has been taken." **20 Ill. Admin. Code § 504.840(b).** And, *if* the CAO determines the grievance *is* of an emergency nature, then the ARB must expedite processing of the grievance. **20 Ill. Admin. Code. § 504.850(g).**

These provisions do not support Plaintiff's current contention that his 12-25-12 grievance could be exhausted by appeal to the ARB. The 12-25-12 grievance was determined to be a *non-emergency* grievance. The provisions for expedited handling of emergency grievances have no application here. As Defendants correctly maintain in their response to the objections (Doc. 45, p. 2), the Administrative Code does not allow an inmate to appeal to the ARB a grievance which has been found to be not an emergency. Plaintiff did not exhaust his claim regarding the excessive force incident via direct appeal to the ARB.

The PLRA's exhaustion requirement was designed to afford correctional officials a chance to address inmate complaints internally, prior to resort to federal litigation. *See, e.g., Kaba,* **458 F.3d at 684,** *citing Woodford,* **548 U.S. at 93.** In the instant case, Plaintiff did not submit his grievance regarding the December 18, 2012 excessive force allegation all the way through the institutional levels. He received his December 25, 2012 grievance back on January 4, 2013 (after it was found to be a non-emergency grievance) and did not follow the next steps under the IDOC procedure. Plaintiff's January 10, 2013 grievance was returned to Plaintiff with a note explaining that he needed to resubmit his grievance with the grievance officer's response and the CAO's response. Plaintiff did not do so prior to filing this suit. Thus, he failed to fully exhaust his administrative remedies as to the claims presented in his complaint.

### D. Conclusion

The undersigned District Judge concludes, as did Magistrate Judge Williams, that Plaintiff failed to exhaust his administrative remedies before filing this lawsuit.

The Court rejects Plaintiff's objections (Doc. 43), **ADOPTS** in its entirety Judge Williams' Report and Recommendation (Doc. 42), and **GRANTS** Defendants' motion (Doc. 25), with one clarification.  Defendants requested the entry of summary judgment (Doc. 25, p.2).  However, as noted above, if a federal district court concludes that an inmate has failed to exhaust administrative remedies before filing suit, the proper ruling is dismissal without prejudice of the inmate's claims.  *See Jones v. Bock,* **549 U.S. 199, 223 (2007);** *Burrell v. Powers*, **431 F.3d 282, 284-85 (7th Cir. 2005).**

Accordingly, the Court **DISMISSES** all claims herein without prejudice, for failure to exhaust.  No claims remain, so all settings will be canceled and the Clerk's Office shall close this case.

IT IS SO ORDERED.

DATED July 17, 2014.

> s/Michael J. Reagan
> Michael J. Reagan
> United States District Judge